BARNETT v. NELSON ET UX.

1. **Mortgage**: FORECLOSURE: TRUST. Where a contract had been entered into between the mortgagor and the mortgagee, in accordance with which the latter was to purchase the property at the sale under another lien, and hold the title until the rents should discharge the amount due him, *held*, that he simply acquired the title in trust, subject to his claim upon the property as security.

2. ———: MORTGAGEE IN POSSESSION. The mortgagee having taken the premises from the party to whom it had been leased pursuant to the contract, before his claim was discharged by the accruing rents, became simply a mortgagee in possession, and his act did not discharge the mortgage.

*Appeal from Adams District Court.*

THURSDAY SEPTEMBER 20.

ACTION to foreclose a mortgage. The defendants for answer set up a contract entered into between the plaintiff, Barnett, the defendant, Thomas Nelson, and one Shafer, whereby said Shafer was to have possession of the mortgaged property, and pay off the plaintiff's mortgage. Further facts are stated in the opinion. Decree for defendants. Plaintiff appeals.

*J. H. Maley* and *McPherson & Scott*, for appellant.

*Frank M. Davis* and *Robert Moon*, for appellee.

ADAMS, J.—The mortgage was given to secure a promissory note for $2,000, and covered the N. ½ of N. E. ¼ of S. W. ¼ of Sec. 12, town 72, range 35, upon which was a flour mill. The S. ½ of the forty was occupied by defendants, Thomas Nelson and wife, as their homestead. Prior to this mortgage were two others, one in favor of the Cass County Bank, and one in favor of one Lewis.

The defendants claim that the plaintiff's mortgage has been paid. They aver that the defendant, Thomas Nelson, the mortgagor, entered into a written contract with the plaintiff and said Shafer, whereby Shafer was to have the use of the mill and ten acres of land for three years, and pay the interest

on all the mortgages annually, and the principal at the end of
the three years, and upon payment was to have an undivided
half of the mill and of the ten acres; that the defendant,
Thomas Nelson, delivered possession to the plaintiff, and
plaintiff delivered possession to Shafer, who remained a short
time, and then plaintiff turned him out and took possession
himself. The defendants further claim that the plaintiff in
turning Shafer out assumed his obligations, among which was
the discharge of the mortgage in suit. Whether he did so
depends partly upon the construction to be given to the con-
tract referred to, and partly upon the circumstances under
which Shafer left the mill. The contract is in these words:
" Carbon, April 8, 1873. Article of agreement made this day
between James Shafer, Thomas Nelson and John Barnett, viz:
The aforesaid Shafer agrees to take the flouring mill and ten
acres of land as shown on plat, and repair said mill, and pay
John Barnett the amount of the mortgage lien in favor of
Cass County Bank, and in favor of Jacob Lewis, and one in
favor of J. Barnett, all amounting to about $5,000, and inter-
est at ten per cent, interest to be paid annually, the principal
to be paid in three years, and upon full payment of principal
and interest the said John Barnett is hereby bound to deed.
one-half of the mill and the aforesaid ten acres to James
Shafer, and deed the other half, with balance of forty acres, as
now owned by Thomas Nelson, to Thomas Nelson. The said
Shafer and Barnett are to let the said Thomas Nelson have
flour out of the mill to the amount of not to exceed 1,500 lbs.
per year. The coal on the said ten acres to be used only for.
the use of the mill property. The said Shafer and Barnett to
pay the taxes on the mill property." The agreement was
signed by the three contracting parties.

It will be observed that the Cass County Bank debt and the
Jacob Lewis debt were to be paid to the plaintiff, Barnett, and
Barnett was to convey by deed not only the one-half the mill
to Shafer, but the balance of the forty acres to Nelson, who
was at the time. the agreement was made the owner of the
whole. It appears that the Cass County Bank mortgage had .
already been foreclosed, and the property was about to be sold

in pursuance of the foreclosure, and that it was understood that Barnett would purchase at the foreclosure sale, and also buy in the Lewis mortgage. The evidence tends to show that such was the understanding, and unless such was the understanding the contract is inexplicable. The plaintiff did buy at the foreclosure sale, and acquired in some way the Lewis mortgage. At the expiration of the time of redemption from the foreclosure sale he acquired a deed, and under that deed he claims to be the owner of the property. The only reason given by plaintiff for bringing this action is that the defendant, Rebecca Nelson, signed the mortgage now sought to be foreclosed, and did not sign the said mortgage given to the Cass County Bank.

The first question to be determined is as to the nature of the interest which the plaintiff acquired through the foreclos-
1. MORTGAGE: ure sale. We are of the opinion that he took the
foreclosure:
trust. title in trust, subject to his claim upon the property as security. In the contract above shown he agreed to convey, upon being paid the amount of the lien in favor of the Bank. This provision contemplates, and the evidence, as we have already observed, tends to show that he was to acquire the lien. If so, he did not sustain to the property the relation of an ordinary purchaser, unless by reason of what afterward transpired. He claims, indeed, that the contract was abandoned. He says in his testimony: "Nelson said one day that we had better get the contract and destroy it." It was not, however, destroyed, and we do not think that the contract could be considered as terminated by reason of that remark. It does not appear that plaintiff assented to the proposition, and if he had, Shafer would not have been bound by it. We are of the opinion, therefore, that the contract was in force when the plaintiff bought at the foreclosure sale, and that Thomas Nelson's interest in the property was not extinguished by the sheriff's deed.

We come now to inquire whether the mortgage now sought to be foreclosed should be considered as extinguished by the
2. ———: mort- contract, or what was done under it. The court
gagee in pos-
session. below decreed virtually that it was extinguished,

and that plaintiff and defendant were joint owners of the mill and the ten acres appurtenant, and that defendant owned the remaining thirty acres, subject, however, to a lien in favor of plaintiff for $1,200, balance of indebtedness remaining unpaid. In so decreeing, we think that the District Court erred. By reference to the contract it will be seen that the defendant and Shafer were to own the mill and the ten acres upon Shafer's making full payment to the plaintiff. Shafer did not make full payment to plaintiff. The plaintiff turned him out of the mill, and took possession, and enjoyed the rents and profits himself. But it is claimed by defendants, and the court said in its decree that "the plaintiff to a certain extent assumed the place of Shafer." Is this correct? The evidence in regard to Shafer's leaving is as follows. He says in his testimony: " I had a private agreement that if I did not give general satisfaction I would quit the mill." Barnett says that Nelson said to him: "I wish you would take the mill and turn Jim Shafer out; he is doing no good. There are complaints about the flour all the time." Shafer says: "After I had been there a year Barnett said I could not have it any longer. I gave it up peaceably, and no arrangement was made about the contract. I quit the mill because I was not wanted any longer." He further says: " I got about $800 out of the mill and my living." When he quit he settled with Barnett, and so far as the evidence shows, he makes no further claim against anybody. The fact appears to be that he did not give satisfaction, that both plaintiff and defendant desired that he should leave, and that he was not unwilling to do so. Having been dispossessed of the property, his obligation to pay plaintiff should be considered as terminated.

After Shafer left, the plaintiff took possession. He says it was Nelson's desire that he should. There does not appear to have been any definite understanding between them in regard to the matter. The arrangement whereby Shafer was to pay for the property had failed. The plaintiff sustained no relation to the property but that of lien holder. While sustaining that relation he took possession at Nelson's request. In one sense he took Shafer's place in the mill, but we see no satis-

factory evidence that he took Shafer's place in the contract. We are of the opinion, then, he should be regarded simply as a mortgagee in possession, and liable to account. Such being our view, the case will be remanded that an account may be taken upon that basis, and if anything appears to be due upon the mortgage, that a decree of foreclosure be rendered accordingly.

REVERSED.